1   MICHAEL HOLECEK, SBN 281034
        mholecek@gibsondunn.com
2   LAUREN M. BLAS, SBN 296823
        lblas@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
4   Los Angeles, CA 90071-3197
    Telephone:  213.229.7000
5   Facsimile:   213.229.7520

6   MEGAN COONEY, SBN 295174
        mcooney@gibsondunn.com
7   GIBSON, DUNN & CRUTCHER LLP
    3161 Michelson Drive
8   Irvine, CA 92612-4412
    Telephone:  949.451.3800
9   Facsimile:   949.451.4220

10  Attorneys for Defendants AMAZON.COM
    SERVICES LLC, and AMAZON LOGISTICS,
11  INC.

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14  | ANDREW GARCIA, an individual, | CASE NO. 2:21-CV-00604-SB-MRW |

15              Plaintiff,

16          v.

17  AMAZON.COM SERVICES LLC
    DBA AMAZON FLEX, a Limited
18  Liability Company; AMAZON
    LOGISTICS, INC., a Corporation;
19  MICHAEL D. DEAL, an individual;
    UDIT MADAN, an individual;
20  MICHAEL MILLER, an individual;
    JOHN FELTON, an individual and
21  DOES 1 through 60, inclusive,

22              Defendants.

**DEFENDANTS AMAZON.COM SERVICES LLC'S AND AMAZON LOGISTICS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS OR STAY ACTION, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**

**Hearing:**
Date:      April 2, 2021
Time:      8:30 a.m.
Place:     350 West First Street
           Los Angeles, CA 90012
           Courtroom 6C
Judge:     Hon. Stanley Blumenfeld, Jr.

Gibson, Dunn &
Crutcher LLP

TO THE CLERK OF THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on April 2, 2021, at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 6C, 350 West First Street, Los Angeles, California 90012, before the Honorable Stanley Blumenfeld, Jr., Defendants Amazon.com Services LLC and Amazon Logistics, Inc. ("Amazon"), by and through their counsel of record, will and do move the Court for an order dismissing or staying the Complaint under its inherent authority to manage litigation through the prohibition against claim splitting, the first to file rule, and the *Colorado River* abstention doctrine. Garcia's claims here are duplicative of claims he is already advancing in an arbitration proceeding pending before the American Arbitration Association. Each action arises out of the same set of facts and all of the claims turn on the same threshold question: whether Garcia was misclassified as an independent contractor under California law. Allowing this action to proceed separately here would frustrate the parties' arbitration proceeding and result in the unnecessary duplication of judicial and party resources. *See Adams v. Cal. Dept. of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007) (prohibiting claim splitting where two suits "arise out of the same transactional nucleus of facts"), *overruled in part on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (a district court has the inherent power "to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants"); *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 818 (1976).

In the alternative, Amazon moves for an order compelling Garcia's case to arbitration under the Federal Arbitration Act ("FAA"), applicable state law, or the Court's inherent powers, and staying the action while the arbitration is pending. Principles of equitable estoppel prevent Garcia from "claiming the benefits" of his arbitration agreement with Amazon by initiating arbitration while "simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.

2006).  The parties specifically selected the FAA as the law to govern their arbitration agreement, and under the FAA the agreement must be enforced according to its terms. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  Moreover, as a purely local delivery driver making deliveries of food, groceries, orders from local stores, and packages, Garcia does not fall within a "class of workers" like "seamen" and "railroad employees" who are "engaged in foreign or interstate commerce" and exempt from the FAA's broad reach.  9 U.S.C. § 1; *In re Grice*, 974 F.3d 950, 956 (9th Cir. 2020); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801–02 (7th Cir. 2020).  Even if the FAA does not apply, however, Garcia's arbitration agreement with Amazon may be enforced under federal law based on this Court's inherent authority, or under state law.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place of January 29, 2021.  *See* Cooney Decl. ¶¶ 4–8.  This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and attached exhibits, the concurrently filed Declarations of Megan Cooney and Alexa Hawrysz and the exhibits attached thereto, all papers on file in this action, and any further arguments or matters that the Court may consider.

Dated: February 19, 2021

                                        MICHAEL HOLECEK
                                        LAUREN M. BLAS
                                        MEGAN COONEY
                                        GIBSON, DUNN & CRUTCHER LLP


                                        By: /s/ *Michael Holecek*
                                                  Michael Holecek


                                        Attorneys for Defendants AMAZON.COM
                                        SERVICES LLC and AMAZON LOGISTICS,
                                        INC.

# TABLE OF CONTENTS

<u>Page</u>

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................ 2

    A.    The Amazon Flex Program and Independent Contractor Terms of Service ...................................................................................................... 2

    B.    Garcia Files a Demand for Arbitration Against Amazon ...................... 3

    C.    Garcia Files This Duplicative Action, and Refuses to Dismiss It ........... 4

III. ARGUMENT ................................................................................................... 5

    A.    This Court Should Dismiss, or at Least Stay, Garcia's Duplicative Lawsuit ................................................................................................... 5

        1.    Garcia's Complaint Should Be Dismissed as Claim Splitting or Under the First-to-File Rule ................................................... 5

        2.    Alternatively, the Court Should Dismiss the Complaint Under the *Colorado River* Doctrine ................................................. 9

        3.    At a Minimum, This Action Should Be Stayed ............................ 11

    B.    In the Alternative, the Court Should Compel Garcia's Claims to Arbitration and Stay This Action ........................................................ 13

        1.    Garcia Waived Any Objection to Arbitration by Filing an Arbitration Demand Against Amazon ...................................... 13

        2.    Even if He Had Not Acquiesced to Arbitration, Garcia's Arbitration Agreement with Amazon Is Enforceable .................... 15

            a.    The FAA's Section 1 Exemption for Transportation Workers Does Not Apply ................................................. 16

            b.    The Parties Executed a Valid Agreement to Arbitrate Their Disputes That Is Not Subject to Rescission ............... 20

            c.    The Parties' Agreement Is Enforceable Under Federal Law Through the Court's Inherent Authority .................... 23

            d.    The Agreement Is Enforceable Under State Law ............... 23

IV. CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935)...................................................................................... 19

*Adams v. Cal. Dept. of Health Servs.*,
  487 F.3d 684 (9th Cir. 2007) ..................................................................... 6, 7

*Adler v. Fred Lind Manor*,
  153 Wash. 2d 331 (2004)............................................................................. 22

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995).............................................................................. 16, 23

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ..................................................................... 6, 9

*Armendariz v. Found. Health Psychcare Servs.*,
  24 Cal. 4th 83 (2004) .................................................................................. 25

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)......................................................................... 1, 16, 20

*Beverly Oaks Phys. Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*,
  983 F.3d 435 (9th Cir, 2020) ...................................................................... 14

*Bradshaw v. City of L.A.*,
  2020 WL 2065007 (C.D. Cal. Mar. 23, 2020) ........................................... 12

*Bryant Family Vineyard v. United Parcel Serv., Inc.*,
  2016 WL 1410127 (N.D. Cal. Apr. 11, 2016)............................................. 15

*Capriole v. Uber Techs., Inc.*,
  460 F. Supp. 3d 919 (N.D. Cal. 2020), *appeal filed* No. 20-16030 (9th
  Cir. 2020) .................................................................................................... 19

*Carrera v. First Am. Home Buyers Prot. Co.*,
  2012 WL 13012698 (C.D. Cal. Jan. 24, 2012)......................................... 6, 7

*Castillo v. CleanNet USA, Inc.*,
  358 F. Supp. 3d 912 (N.D. Cal. 2018)........................................................ 18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ...................................................................... 20

*Church of Scientology of Cal. v. United States Dep't of Army*,
  611 F.2d 738 (9th Cir. 1979) ......................................................................... 5

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001)................................................................................. 16, 17

*Circuit City Stores, Inc. v. Ahmed*,
  283 F.3d 1198 (9th Cir. 2002) ...................................................................... 25

*Circuit City Stores, Inc. v. Najd*,
  294 F.3d 1104 (9th Cir. 2002) ...................................................................... 21

*Clements v. Airport Authority of Washoe Cty.*,
  69 F.3d 321 (9th Cir. 1995) ........................................................................... 5

*Clinton v. Jones*,
  520 U.S. 681 (1997).................................................................................... 11

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ................................................................... 11, 17

*Cole v. CRST, Inc.*,
  317 F.R.D. 141 (C.D. Cal. 2016)................................................................... 5

*Colorado River Water Conservation Dist. v. U.S.*,
  424 U.S. 800 (1976).............................................................................. 10, 11

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006) ................................................................. 14, 21

*Curtis v. Citibank, N.A.*,
  226 F.3d 133 (2d Cir. 2000) ......................................................................... 8

*Czerwinski v. Pinnacle Prop. Mgmt. Servs., LLC*,
  2019 WL 2750183 (Wash. Ct. App. July 1, 2019)....................................... 22

*Doe v. Project Fair Bid Inc.*,
  2011 WL 3516073 (W.D. Wash. Aug. 11, 2011)......................................... 21

Gibson, Dunn &
Crutcher LLP

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*eNom, Inc. v. Philbrick,*
    2008 WL 4933976 (W.D. Wash. Nov. 17, 2008) ........................................7

*First Options of Chi., Inc. v. Kaplan,*
    514 U.S. 938 (1995) ...................................................................................20

*Fortune, Alsweet & Eldridge, Inc. v. Daniel,*
    724 F.2d 1355 (9th Cir. 1983) ...................................................................15

*Gatlin v. United Parcel Serv., Inc.,*
    2018 WL 10161198 (C.D. Cal. Aug. 23, 2018) ..........................................8

*Grice v. Uber Techs.,*
    2020 WL 497487 (C.D. Cal. Jan. 7, 2020), *aff'd In re Grice,* 974 F.3d
    950 (9th Cir. 2020) ....................................................................................16

*In re Grice,*
    974 F.3d 950 (9th Cir. 2020) ..............................................................17, 18

*Grigson v. Creative Artists Agency, LLC,*
    210 F.3d 524 (5th Cir. 2000) .....................................................................14

*Haven Beauty Inc. v. Kardashian,*
    2016 WL 9211656 (C.D. Cal. Oct. 27, 2016) ...........................................13

*Heller v. Rasier, LLC,*
    2020 WL 413243 (C.D. Cal. Jan. 7, 2020) .........................................18, 20

*Henderson v. Bonaventura,*
    649 F. App'x 639 (9th Cir. 2016) ..........................................................9, 10

*In re Henson,*
    869 F.3d 1052 (9th Cir. 2017) ...................................................................14

*Heritage Provider Network, Inc. v. Super. Ct.,*
    158 Cal. App. 4th 1146 (2008) ..................................................................12

*Jordan v. Maplebear Inc. dba Instacart,*
    No. CGC-19-579780 (S.F. Super. Ct. June 26, 2020) ...............................18

*Keystone Land & Dev. Co. v. Xerox Corp.,*
    152 Wash. 2d 171 (2004) .....................................................................20, 22

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Kingdom of Sweden v. Melius*,
   2015 WL 7574463 (C.D. Cal. Nov. 25, 2015) ......................................................... 12

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
   787 F.3d 1237 (9th Cir. 2015) .............................................................................. 6

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979) .............................................................................. 11

*Loewen v. Lyft, Inc.*,
   129 F. Supp. 3d 945 (N.D. Cal. 2015)................................................................. 25

*Lopez v. Am. Express Bank, FSB*,
   2010 WL 3637755 (C.D. Cal. Sept. 17, 2010) ......................................................... 12

*M.A. Mortenson Co. v. Timberline Software Corp.*,
   140 Wash. 2d 568 (2000)........................................................................... 21, 22

*Magana v. DoorDash, Inc.*,
   343 F. Supp. 3d 891 (N.D. Cal. 2018).................................................................. 19

*Mason-Dixon Lines, Inc. v. Local Union No. 560, Int'l Bhd. of Teamsters*,
   443 F.2d 807 (3d Cir. 1971) .............................................................................. 23

*Mayne v. Monaco Enters., Inc.*,
   191 Wash. App. 113 (2015)............................................................................... 22

*McAdory v. TTM Techs., Inc.*,
   2017 WL 8186697 (C.D. Cal. June 26, 2017) ......................................................... 11

*McGrath v. DoorDash, Inc.*,
   2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ......................................................... 19

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ...................................................................... 21, 22

*Moore v. Universal Protection Serv., LP*,
   2020 WL 2518030 (C.D. Cal. May 15, 2020)......................................................... 11

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983)............................................................................ 10, 15, 23

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Nakash v. Marciano*,
   882 F.2d 1411 (9th Cir. 1989) ................................................................. 6

*NCR Corp. v. Hayes Children Leasing Co.*,
   61 F.3d 911, 1995 WL 433916 (9th Cir. 1995) ...................................... 10

*New Prime, Inc. v. Oliveira*,
   139 S. Ct. 532 (2019) ............................................................................ 23

*Nitsch v. DreamWorks Animation SKG Inc.*,
   100 F. Supp. 3d 851 (N.D. Cal. 2015) ................................................... 14

*Oliveira v. New Prime, Inc.*,
   857 F.3d 7 (1st Cir. 2017), *aff'd*, 139 S. Ct. 532 (2019) ....................... 24

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ..................................................................... 5

*Platte River Ins. Co. v. Dignity Health*,
   2013 WL 1149656 (N.D. Cal. Mar. 19, 2013) ......................................... 9

*Red v. Unilever United States, Inc.*,
   2010 WL 11515197 (C.D. Cal. Jan. 25, 2010) ......................................... 8

*Rhoades v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   961 F.2d 217, 1992 WL 84188 (9th Cir. 1992) ..................................... 15

*Riffel v. Regents of the Univ. of Cal.*,
   2019 WL 5978784 (C.D. Cal. Nov. 12, 2019) ......................................... 6

*Rittmann v. Amazon.com, Inc.*,
   2019 WL 2475791 (W.D. Wash. June 13, 2019) .............................*passim*

*Rogers v. Lyft, Inc.*,
   452 F. Supp. 3d 904 (N.D. Cal. 2020) ................................................... 17

*Roman v. Northrop Grumman Corp.*,
   2016 WL 10987312 (C.D. Cal. Dec. 14, 2016) ...................................... 17

*Romney v. Franciscan Med. Grp.*,
   186 Wash. App. 728 (2015) .................................................................... 24

Gibson, Dunn &
Crutcher LLP

vi

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Schatz v. Allen Matkins Leck Gamble & Mallory LLP*,
  45 Cal. 4th 557 (2009) ...................................................................... 25

*Shappell v. Sun Life Assurance Co.*,
  2011 WL 2070405 (E.D. Cal. May 23, 2011) ...................................... 8, 9

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984).................................................................................. 23

*Strotz v. Dean Witter Reynolds, Inc.*,
  223 Cal. App. 3d 208 (1990) ................................................................. 25

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
  Practices, & Prod. Liab. Litig.*,
  838 F. Supp. 2d 967 (C.D. Cal. 2012) .................................................. 14

*Vail Servs. Grp., LLC v. Dines*,
  2018 WL 3069525 (D. Colo. June 21, 2018) ........................................ 10

*Wagner v. Stratton Oakmont, Inc.*,
  83 F.3d 1046 (9th Cir. 1996) ................................................................ 20

*Waithaka v. Amazon.com, Inc.*,
  966 F.3d 1 (1st Cir. 2020)...................................................................... 24

*Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*,
  122 Wash. 2d 371 (1993)....................................................................... 20

*Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*,
  42 F. Supp. 3d 1377 (S.D. Cal. 2014) ..................................................... 7

*Zuver v. Airtouch Commc'ns, Inc.*,
  153 Wash. 2d 293 (2004)....................................................................... 21

**Statutes**

9 U.S.C. § 1...............................................................................*passim*

9 U.S.C. § 3 ........................................................................... 12, 20

Cal. Bus. & Prof. Code § 17200 *et seq.*.............................................. 3

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

Cal. Civ. Proc. Code § 1281.2 .......................................................................... 25

Cal. Civ. Proc. Code § 1281.4 .......................................................................... 12

Cal. Civ. Proc. Code § 1550 ............................................................................. 24

Transportation Act of 1920, §§ 300–316, 41 Stat. 456 .................................... 16

**Treatises**

Restatement (Second) Conflict of Laws § 187 ................................................. 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Andrew Garcia has filed his Complaint in an apparent attempt to get two bites at the apple.  Following his two months performing delivery services with Amazon as an Amazon Flex Delivery Partner, on September 1, 2020, Garcia filed a demand for arbitration with the American Arbitration Association ("AAA") alleging that he was mis-classified as an independent contractor and entitled to various unpaid wages and penal-ties.  Nearly four months later—and after Amazon paid arbitration fees—Garcia filed this action in state court based on the same theory and alleging many of the same exact claims.  Then, after being confronted with the fact that he had instituted two separate proceedings using separate lawyers, Garcia expanded this action by filing a First Amended Complaint ("FAC") to name *three* additional individual defendants, including in-house attorneys for Amazon.[1]  His duplicative FAC should be dismissed entirely.

Several equitable doctrines exist to prevent the claim splitting and waste of re-sources that Garcia's litigation tactics create.  As Garcia has made clear that he will not voluntarily dismiss this case in favor of his pending arbitration proceeding, the Court should intervene to prevent the unnecessary burden this duplicative action places on the Court's and parties' resources and the risk of conflicting decisions it creates.  Because Garcia has already consented to arbitrate these exact disputes by submitting them in ar-bitration, dismissing this action will promote the "liberal federal policy favoring arbitra-tion." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).

Alternatively, if the Court does not dismiss Garcia's duplicative claims altogether, it should at least direct him to pursue them in arbitration.  Garcia not only agreed to arbitrate his disputes with Amazon when he signed up to perform delivery services, but he has since filed a demand for arbitration regarding the same claims he now seeks to litigate.  Basic principles of estoppel and fundamental fairness prevent Garcia from avail-ing himself of an arbitration agreement on the one hand, and challenging it on the other.

---

[1]  The inclusion of the individual defendants is unsupported by any factual allegations, nor could it be as it lacks any good faith basis in fact or law.  *See* Fed. R. Civ. P. 11.

While Amazon submits that this alone warrants compelling Garcia's claims to arbitration, the FAA, the Court's inherent powers, and state law also support that outcome. The parties chose for the policy favoring arbitration embodied in the FAA to govern their agreement, so Garcia bears the burden to prove that the exemption for workers "engaged in foreign or interstate commerce" applies to him. 9 U.S.C. § 1. As a purely local delivery driver, he cannot do so. Moreover, even if the FAA does not apply, the Court has the power to enforce the parties' clear agreement to arbitrate through its inherent powers and under state law.

Garcia cannot renege on his agreement to arbitrate these disputes, particularly where he has already brought Amazon into arbitration proceedings on the same claims. The Court should require him to stand by his agreement, and dismiss, stay, or compel arbitration of his duplicative claims.

## II.    FACTUAL BACKGROUND

### A.    The Amazon Flex Program and Independent Contractor Terms of Service

Amazon offers a range of products, groceries, and household items for consumers to purchase through its website and mobile applications, including items from Whole Foods Market stores throughout California. Hawrysz Decl. ¶¶ 3–4. To help Amazon deliver customer orders, Amazon offers independent contractor delivery drivers the opportunity to partner with Amazon through the Amazon Flex mobile application. *Id.* ¶ 3. These local Delivery Partners, like Garcia, sign up through the Amazon Flex app to make short, local deliveries by selecting a zip code they wish to service, then they use their personal vehicles to make those deliveries in their selected area. *Id.* ¶¶ 5–6. Garcia signed up to be a Delivery Partner using the Amazon Flex app on September 11, 2019, and elected to perform delivery services in Los Angeles. *Id.* ¶¶ 6–7, 13.

When using the Amazon Flex app to sign up to make local food or package deliveries, Delivery Partners must create an account, log into the app, provide the zip code for the local area they wish to service, and affirmatively agree to the Amazon Flex Independent Contractor Terms of Service ("TOS"). *Id.* ¶¶ 6–7. Garcia signed up and agreed to be

bound by the TOS, which clearly stated that by accepting the TOS, the Delivery Partner "AGREE[S] TO RESOLVE DISPUTES BETWEEN YOU AND AMAZON ON AN IN-DIVIDUAL BASIS THROUGH **FINAL AND BINDING ARBITRATION**, UNLESS YOU OPT OUT OF THE ARBITRATION WITHIN 14 CALENDAR DAYS OF THE EFFECTIVE DATE OF THIS AGREEMENT." *Id.* Ex. A at 1.  Section 11 of the TOS explains the full terms of the arbitration agreement, including the procedure for opting out: Delivery Partners simply had to send Amazon a one-line email within 14 days after executing the agreement.  *Id.*  Garcia accepted the TOS and separately "AGREE[D] AND ACCEPT[ED]" the arbitration provision of the TOS, which is found both on the first page of the TOS and again in Section 11.  *Id.* ¶¶ 9–10, 13; *id.* Ex. A.  Garcia did not exercise his right to opt out.  *Id.* ¶ 13.

## B.  Garcia Files a Demand for Arbitration Against Amazon

On September 1, 2020, Garcia filed a demand for arbitration against Amazon.com, Inc., Amazon Logistics, Inc., and Whole Foods Market, Inc. "pursuant to an Agreement entered into by the parties when [Garcia] began working for Amazon on or about 2019." Cooney Decl. Ex. B at 1 (Statement of Claims); *see also id*. Ex. A at 1 (Demand for Arbitration); *id.* Ex. C at 1 (Arbitration Fee Waiver).  Garcia alleged that he was misclas-sified as an independent contractor under California law and that his claims should be resolved "by final and binding arbitration," in accordance with AAA's Employment Ar-bitration Rules and Mediation Procedures.  *Id.* Ex. A at 1.  While Garcia attached an Amazon Flex site terms and conditions to his demand (which also requires the arbitration of disputes), both his demand and Statement of Claims refer to the agreement he "signed" when he "began working for Amazon" in September 2019—the Amazon Flex TOS.  *Id.* Ex. A at 1, Ex. B at 1.  As a result of his purported misclassification, Garcia alleged that he is entitled to damages and penalties for unpaid minimum and overtime wages, failure to pay timely wages, unreimbursed business expenses, inaccurate wage statements, and violation of California's Unfair Competition Law, Business & Professions Code § 17200 *et seq*. ("UCL").  FAC ¶¶ 43–225.

On November 30, 2020, Amazon paid the initial arbitration fees required to begin administering Garcia's arbitration.  Cooney Decl. ¶¶ 2–3; Ex. C at 1 (Arbitration Fee Waiver).  At this time, Amazon's counsel had no idea that Garcia had engaged different counsel to represent him in this separate judicial proceeding based on identical facts.  *Id.*

## C.   Garcia Files This Duplicative Action, and Refuses to Dismiss It

On December 21, 2020, Garcia filed this action against "Amazon.com Services LLC DBA Amazon Flex," which refers both to Amazon.com Services LLC, a wholly owned subsidiary of Amazon.com, Inc., and Amazon Logistics, Inc., which operates the Amazon Flex program.  *See* Compl. ¶ 1; Dkt. 1-3; *see generally* Hawrysz Decl.  Garcia's complaint also brought claims against one of Amazon's in-house attorneys Michael Deal, who appears to have been named improperly in an (unsuccessful) effort to avoid federal diversity jurisdiction.  *See* Dkt. 1, 1-3.

On January 5, 2021, Amazon notified Garcia's counsel that his complaint was duplicative of an already pending arbitration filed on Garcia's behalf by another law firm.  Cooney Decl. ¶ 4.  Amazon then sent Garcia's counsel a letter on January 19, asking that Garcia dismiss his lawsuit as duplicative.  *Id.* ¶ 5, Ex. E.  On January 29, 2021, the parties conferred by phone, during which Garcia's counsel stated he might stipulate to arbitrate his claims.  *Id.* ¶ 6.  Following that call, Garcia's counsel proposed stipulating to arbitrate the claims in this action, provided that Amazon agreed to modify the terms of the existing arbitration agreement.  *Id.* ¶ 7–8, Ex. F.

During the course of those discussions—and without notice—Garcia filed his FAC, to bring Amazon Logistics, Inc. and three additional individual Amazon employees—Udit Madan, Michael Miller, and John Felton—into the action as defendants.  Dkt. 12; Cooney Decl. ¶ 8.[2]  Garcia's FAC alleges eighteen causes of action, which include all of the same claims that are in his demand for arbitration.  FAC ¶¶ 43–57 (unpaid minimum and overtime wages), 72–107 (failure to reimburse expenses, unpaid final

---

[2]  To Amazon's knowledge, Messrs. Deal, Madan, Miller, and Felton have not been served with the summons and complaint.  If the Court does not dismiss this action or compel arbitration, Amazon reserves all rights to challenge the baseless and insufficiently pleaded claims against these individuals, as well as those against Amazon.

wages, inaccurate wage statements), 203–213 (UCL).  In addition, Garcia purports to bring claims for missed meal and rest breaks, failure to maintain payroll records, failure to produce employee file, disability discrimination, retaliation, and wrongful termination. *Id.* ¶¶ 58–71, 108–202, 214–225.  All of Garcia's claims are based on the theory that Amazon misclassified him as an independent contractor under California law.  *Id.* ¶ 18.

## III.   ARGUMENT

### A.   This Court Should Dismiss, or at Least Stay, Garcia's Duplicative Lawsuit

Garcia has filed this action, alleging a series of claims stemming from his two months as a Delivery Partner, even though he was already pursuing many of the *exact same claims* based on the *exact same theory* in arbitration.  This sort of duplicative litigation is prohibited under various doctrines and should be dismissed in its entirety.

#### 1.   Garcia's Complaint Should Be Dismissed as Claim Splitting or Under the First-to-File Rule

Two related doctrines, claim splitting and the first-to-file rule, have developed to prevent duplicative litigation and ensure that plaintiffs, like Garcia, "bring all related claims in a single action."  *Cole v. CRST, Inc.*, 317 F.R.D. 141, 146 (C.D. Cal. 2016).  The doctrine of claim splitting applies claim preclusion principles "'to protect the defendant from being harassed by repetitive actions based on the same claim.'"  *Clements v. Airport Authority of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995) (quoting Restatement (2d) Judgments, § 26).  Similarly, the first-to-file rule is "designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments" by allowing a district court to dismiss, stay, or transfer a duplicative action.  *Church of Scientology of Cal. v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016).  Courts have acknowledged that these doctrines should not be viewed as "rigid or inflexible rule[s] to be mechanically applied, but rather [are] to be applied with a view to the dictates of sound judicial administration."  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982).

"[I]n assessing whether the second action is duplicative of the first" under the prohibition against claim splitting, the Court "examine[s] whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams v. Cal. Dept. of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007), *overruled in part on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). Ultimately, the most important factor is "whether the two suits arise out of the ***same transactional nucleus of facts***." *Id.* (emphasis added) (citation omitted). The first-to-file rule looks to near identical factors: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Riffel v. Regents of the Univ. of Cal.*, 2019 WL 5978784, at *3–4 (C.D. Cal. Nov. 12, 2019); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625–26 (9th Cir. 1991). For each rule, the two actions need not exhibit "exact parallelism"; it is sufficient if the parties and the issues are "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989); *Carrera v. First Am. Home Buyers Prot. Co.*, 2012 WL 13012698, at *5 (C.D. Cal. Jan. 24, 2012) (finding sufficient similarity where "factual and legal issues substantially overlap").

Garcia's duplicative actions, which seek to pursue overlapping claims against Amazon that all arise from the same set of facts, are precisely what these doctrines were designed to stop. Because each of the claim splitting and first-to-file rule factors are present here, Garcia's duplicative action should be dismissed in its entirety.

***First***, the parties in both actions are sufficiently similar because both cases are brought by Garcia against Amazon. In arbitration, Garcia identified Amazon.com, Inc., as well as wholly owned subsidiaries Amazon Logistics, Inc., and Whole Foods Market, Inc., as defendants. *See* Cooney Decl. ¶ 2. Amazon Logistics, Inc. is also named as a defendant here, as is a wholly-owned subsidiary of Amazon.com, Inc., Amazon.com Services LLC. *See* Dkt. 1-3, 12. It is immaterial that there are some unique defendants in this action, including the individual defendants, because these doctrines "do[] not require exact identity of the parties"; they need only have "substantial similarity." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015); *see also*

*Adams*, 487 F.3d at 691 ("Here, three of the new defendants . . . were employees of CDHS at the time of the events described in both of Adams's complaints, and thus had a close relationship" with the named defendants).  It is clear from the face of the complaint that Garcia's goal, just as it was in the arbitration, was to identify the Amazon entity involved with the "Amazon Flex" Program, through which Garcia contends that he was misclassified as an independent contractor.  *See* FAC ¶ 1 (naming "Amazon.com Services LLC DBA Amazon Flex").  That makes them "sufficiently similar" for purposes of this analysis.  *See Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1382 (S.D. Cal. 2014) (finding actions included "substantially similar" parties even though they did not name identical defendants).

**Second**, the claims advanced by Garcia in this action and the arbitration "arise out of the same nucleus of operative facts, so simultaneous adjudication of both cases would waste judicial resources, multiply the proceedings, undermine judicial efficiency, and risk conflicting determinations of the parties' legal rights." *eNom, Inc. v. Philbrick*, 2008 WL 4933976, at *2 (W.D. Wash. Nov. 17, 2008).  Garcia's arbitration and this action are both premised on the same core theory: that Amazon misclassified him as an independent contractor under California law, which allegedly caused him to suffer a variety of a legal violations.  *See* FAC ¶ 25; Cooney Decl. ¶¶ 2–3, Exs. A, B.  In fact, both actions raise *identical* claims for:  (1) unpaid wages (including minimum and overtime wages) (FAC, Counts 1–2); (2) unreimbursed business expenses (*id.*, Count 5); (3) untimely payment of wages and waiting time penalties (*id.*, Counts 6–7); (4) inaccurate wage statements (*id.*, Count 8); and (5) violation of California's Unfair Competition Law (*id.*, Count 17).  *See also* Cooney Decl. Exs. A, B.

The fact that Garcia advances some additional claims in this action, for discrimination and retaliation under California law, does not defeat the substantial similarity between this case and his arbitration, particularly where both cases will turn on the threshold issue of whether Garcia is even an employee entitled to those legal protections.  *See Carrera*, 2012 WL 13012698, at *5 ("[E]ven though Plaintiff's [complaint] asserts some

claims that were not asserted in [the earlier-filed action], the factual and legal issues substantially overlap and thus weigh in favor of applying the first-to-file rule.").  In both actions, "the issues to be resolved center around Defendant's practices and procedures regarding [classifying Garcia as an independent contractor], which can be determined through one instance of discovery instead of two."  *Gatlin v. United Parcel Serv., Inc.*, 2018 WL 10161198, at *6 (C.D. Cal. Aug. 23, 2018) (concluding action for failure to pay overtime and final wages was substantially similar to action alleging meal break violations and failure to compensate for security screenings).  Moreover, even though Garcia is not currently advancing his discrimination claims in arbitration, he could seek to amend his arbitration demand to include them.  *See* https://www.adr.org/sites/default/files/CommercialRules_Web.pdf, at Rule P-2 (contemplating amendment of pleadings).[3]  Accordingly, the Court would "not abuse its discretion in dismissing those claims" here, as they too could be heard in arbitration "if plaintiff[] . . . timely raise[s] them."  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000).  Therefore, this element also weighs in favor of dismissing this duplicative action.

**Third**, there is no question that the arbitration proceeding is the first-filed action.  Garcia filed his demand for arbitration against Amazon on September 1, 2020.  *See* Cooney Decl. ¶ 2, Exs. A–C.  Nearly four months later (and after Amazon paid mandatory arbitration fees), Garcia filed this lawsuit through a different attorney.  *See* Compl. (filed December 21, 2020); Cooney Decl. ¶ 3.  Thus, this factor weighs in favor in finding that Garcia's lawsuit is duplicative of his arbitration proceeding.  *See Red v. Unilever United States, Inc.*, 2010 WL 11515197, at *4 (C.D. Cal. Jan. 25, 2010) ("chronology of the actions weigh[ed] in favor of the application of the first-to-file rule" where first-filed class action was filed five months before subsequent overlapping class action).

These same considerations were analyzed in a near-identical situation in *Shappell v. Sun Life Assurance Co.*, and warranted dismissing the action in favor of an "already-

---

[3]  Garcia's counsel in this matter has suggested that Garcia's arbitration counsel may be "closing" the arbitration proceeding, but the arbitration remains pending as of the date of this filing.  Even if the arbitration is withdrawn, however, the Court should not permit this type of gamesmanship.

Gibson, Dunn &
Crutcher LLP

commenced arbitration proceeding[].'"  2011 WL 2070405, at *3 (E.D. Cal. May 23, 2011).  There, the plaintiff filed a lawsuit for wrongful denial of disability benefits, which was compelled to arbitration.  *Id*. at *1.  While the arbitration proceedings were pending, the plaintiff filed *another* lawsuit against the same defendant, and two others, for a different claim premised on the "same interference with longterm [sic] disability benefits." *Id*.  The court held that the two actions were duplicative as the claims "ar[o]se from the same alleged misconduct and essentially the same factual allegations," and that it had "[t]he inherent power to manage [its] own docket" by "order[ing] dismissal of duplicative claims in order to foster judicial economy and 'comprehensive disposal of litigation.'" *Id*. at *2 (quoting *Alltrade*, 946 F.2d at 627–28).

The same outcome is warranted here, for the same reasons.  As the court in *Shappell* explained, dismissal was especially proper because it would give full effect to the parties' agreement to arbitrate "[a]ny controversy arising out of [the Employment] Agreement."  2011 WL 2070405, at *2; *see also id.* at *3 (because the litigation was "properly subject to the already-commenced arbitration proceedings . . . the lawsuit [was] properly subject to dismissal").  Likewise, here, Garcia (not Amazon) filed an arbitration demand in accordance with the parties' agreement to arbitrate "any and all disputes" they had relating to the TOS.  Hawrysz Decl., Ex. A; *see also* Cooney Decl. Ex. B (stating that the claims were subject to arbitration "pursuant to an Agreement entered into by the parties when [Garcia] began working for Amazon on or about 2019").  Dismissing this action under either theory in favor of the arbitration will give full effect to the parties' agreement, and Garcia's first choice of forum.

### 2. Alternatively, the Court Should Dismiss the Complaint Under the *Colorado River* Doctrine

While neither the first-to-file rule nor claim splitting are meant to be mechanically applied in a way that prevents a court from exercising its inherent authority to manage litigation, Amazon acknowledges that those doctrines have sometimes been limited to situations where the two actions were pending in *federal* courts.  *See Henderson v. Bon-*

*aventura*, 649 F. App'x 639, 641 (9th Cir. 2016) (nonprecedential decision, concluding that district court abused its discretion in applying claim splitting where one action was in state court and the other in federal court); *Platte River Ins. Co. v. Dignity Health*, 2013 WL 1149656, at *9 (N.D. Cal. Mar. 19, 2013) (declining to engage in a "full-throated first-to-file analysis" to determine whether to enjoin an arbitration proceeding). Even if the Court agrees with that interpretation, its next step would not be to entertain the action, but to consider "whether to abstain from the case" under the *Colorado River* doctrine. *Henderson*, 649 F. App'x at 641 (citing *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 818 (1976)).

The *Colorado River* doctrine permits district courts to "dismiss[] [a case] in the event of an exercise of concurrent jurisdiction." *Colorado River*, 424 U.S. at 818. The *Colorado River* factors—"the inconvenience of the federal forum," "the desirability of avoiding piecemeal litigation," and "the order in which jurisdiction was obtained"—support dismissing this action. *Id.* To start, the parties have selected arbitration as their chosen forum, so allowing this case to proceed in federal court would be inconvenient and frustrate "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22–23 (1983) (concluding a stay under *Colorado River* where two cases were pending in court, but one party wanted to compel arbitration, "frustrated the statutory policy of rapid and unobstructed enforcement of arbitration agreements"); *see also Vail Servs. Grp., LLC v. Dines*, 2018 WL 3069525, at *4 (D. Colo. June 21, 2018) (applying *Colorado River* and staying federal action in favor of earlier-filed arbitration).

Moreover, there is no doubt that allowing these actions to proceed on parallel tracks will result in piecemeal and duplicative litigation which can be avoided altogether by dismissing this federal court action. Some courts have declined to apply the *Colorado River* doctrine where it would *prevent* arbitrable claims from being arbitrated speedily, but that is precisely the opposite of how it would be used here. *Cf. NCR Corp. v. Hayes Children Leasing Co.*, 61 F.3d 911, 1995 WL 433916, at *2 (9th Cir. 1995) (noting that

Gibson, Dunn & Crutcher LLP

concern over piecemeal litigation could not override "the federal policy of encouraging arbitration").  To the contrary, allowing this action to go forward will risk unnecessarily litigating claims that Garcia has already conceded are arbitrable by pursuing them in arbitration.  *See infra* Part III.B.1.  Finally, the jurisdiction of the arbitrator to resolve these disputes vested first, as the arbitration proceeding was filed nearly four months before this action.  Cooney Decl. ¶ 2.

Accordingly, the "general principle . . . to avoid duplicative litigation" and strong policy favoring arbitration support applying the *Colorado River* doctrine here.  *Colorado River*, 424 U.S. at 817.

### 3.    At a Minimum, This Action Should Be Stayed

If the Court declines to dismiss Garcia's duplicative action outright, it should at least stay the case pending the resolution of the arbitration proceeding.  Deferring to the arbitration proceeding will be the "fairest course for the parties" short of dismissal, and will conserve this Court's limited resources.  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  The Court should exercise its "broad discretion to stay proceedings" and hold this action in abeyance until Garcia's arbitration is fully resolved.  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

In determining whether to use its "inherent power" to stay a pending action, courts in this Circuit typically consider (1) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the possible damage which may result from the granting of a stay."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also Moore v. Universal Protection Serv., LP*, 2020 WL 2518030, at *3 (C.D. Cal. May 15, 2020) (applying *CMAX* factors where a party seeks a stay "pending resolution" of another action).  All three factors support a stay.

***First***, the "orderly course of justice" would be promoted by deferring to the parties' chosen method of dispute resolution.  The parties explicitly agreed to arbitrate their disputes, and Garcia sought to enforce that agreement by filing a demand for arbitration.  If

this Court does not defer to that arbitration proceeding, whether by dismissing or staying this action, then it will risk the "inconvenience, if not injustice" of allowing near-identical actions to proceed in tandem with potentially contradicting outcomes. *McAdory v. TTM Techs., Inc.*, 2017 WL 8186697, at *3 (C.D. Cal. June 26, 2017). As discussed above, there is nothing orderly about proceeding in that manner.

Both federal and California law confirms this. Under the FAA and the California Arbitration Act, a court is *required* to stay proceedings once the claims are in arbitration. *See* 9 U.S.C. § 3 ("the court in which [the] suit is pending, upon being satisfied that the issues involved in such suit or proceeding is referable to arbitration under such an agreement, shall . . . stay the trial of the action"); Cal. Civ. Proc. Code § 1281.4 (the court "shall" stay the action upon the filing of a motion to compel arbitration of "a controversy which is an issue involved in an action or proceeding pending before [the] court"); *Heritage Provider Network, Inc. v. Super. Ct.*, 158 Cal. App. 4th 1146, 1153 (2008) (even a "single overlapping issue" mandates a stay under section 1281.4). These provisions make clear that a court must stand back when the claims before it are being arbitrated. **That is already the case here.** The right course of action is for the Court to permit the arbitration to proceed, and to make sure this lawsuit does not.

**Second**, Amazon will face significant hardship if forced to proceed on Garcia's claims in this action, as well as in his arbitration. If there is any litigation of the claims in this case, Amazon's "right to arbitration will have been lost." *Rittmann v. Amazon.com, Inc.*, 2019 WL 2475791, at *1 (W.D. Wash. June 13, 2019) (granting stay pending appeal). "It would be unjust for [Amazon] to have to litigate this case and incur related expenses when the parties agreed to an enforceable arbitration agreement," and Garcia himself sought to enforce that agreement by filing an arbitration demand. *Lopez v. Am. Express Bank, FSB*, 2010 WL 3637755, at *5 (C.D. Cal. Sept. 17, 2010) (staying action pending *Concepcion*).

**Finally**, Garcia will not be prejudiced by staying this action. Garcia's claims are already being advanced in arbitration, so a stay "would not preclude them." *Bradshaw*

1   *v. City of L.A.*, 2020 WL 2065007, at *7 (C.D. Cal. Mar. 23, 2020).  Even if a stay would
2   cause Garcia to suffer "a delay in the recovery of money damages" (it should not), that
3   "is not sufficient to warrant the denial of a stay."  *Kingdom of Sweden v. Melius*, 2015
4   WL 7574463, at *3 (C.D. Cal. Nov. 25, 2015).  Denying Garcia *two* opportunities to get
5   a favorable result on his theories is far from prejudicial; rather, it is equitable.

6        If the Court does not dismiss this duplicative action altogether, it should at least
7   use its discretion to stay the case and prevent the hardship that will result if it proceeds.

8   **B.    In the Alternative, the Court Should Compel Garcia's Claims to Arbitration**
9   **and Stay This Action**

10       When he signed up to perform delivery services using the Amazon Flex applica-
11  tion, Garcia affirmatively agreed that he would bring any and all disputes he had against
12  Amazon in arbitration.  Garcia has lived up to that commitment once, by seeking to liti-
13  gate his concerns over his independent contractor classification in arbitration.  But now,
14  with the counsel of different attorneys, Garcia has elected to renege on his contractual
15  obligations and pursue the same case theory in court.  Not only does equity prohibit Gar-
16  cia's tactics, but he was right the first time:  Garcia entered into an arbitration agreement
17  with Amazon that is valid and enforceable under the FAA, this Court's inherent authority,
18  and state law.  To the extent he can pursue the claims in this action at all, Garcia must
19  pursue them in arbitration.

20  **1.    Garcia Waived Any Objection to Arbitration by Filing an Arbitration**
21  **Demand Against Amazon**

22       Garcia's refusal to submit his (duplicative) claims to arbitration is startling given
23  that just four months ago, he filed a demand for arbitration based on "an Agreement en-
24  tered into by the parties when [Garcia] began working for Amazon on or about 2019."
25  Cooney Decl., Ex. B at 1.  Under basic contractual and equitable principles, Garcia's
26  decision to file an arbitration demand on these same claims and theories is enough to
27  conclude that they must be compelled to arbitration here.

28       "For instance, equitable estoppel is one of the methods a party can use to compel

arbitration: '[e]quitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Haven Beauty Inc. v. Kardashian*, 2016 WL 9211656, at *2 (C.D. Cal. Oct. 27, 2016) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)).  Typically, equitable estoppel arises in the arbitration context when a *nonsignatory* seeks to enforce the agreement as to one of the signatories "because of the close relationship between the entities." *Comer*, 436 F.3d at 1101.  But this case is far less complicated—both Amazon and Garcia are signatories.  Hawrysz Decl., Ex. A; *see also* Cooney Decl., Exs. A, B.

The "traditional equitable estoppel requirements" are that the party acts with the belief or "inten[t] that his conduct shall be acted on," and the other party "rel[ies] on the former's conduct to his injury." *Beverly Oaks Phys. Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 442 (9th Cir, 2020).  But "'[t]he lynchpin for equitable estoppel is equity—fairness.'" *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 838 F. Supp. 2d 967, 991 (C.D. Cal. 2012) (quoting *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000)).  Each of the traditional elements of estoppel is present here:  Garcia represented that his claims were subject to arbitration by submitting them in arbitration "pursuant to an Agreement" he "signed" "when [he] began working for Amazon" (Cooney Decl., Ex. A at 1, Ex. B at 1; Hawrysz Decl., ¶ 7, Ex. A); Amazon relied on that representation by engaging in the arbitration and paying arbitration fees (Cooney Decl., ¶ 3); and, now, Garcia seeks to avoid arbitration by filing this action and contending that his claims are not actually arbitrable.  It is fundamentally unfair that Garcia can avail himself of an arbitration agreement he accepted, and three months later argue that he is not bound by that agreement at all.  *See In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) ("The theory behind equitable estoppel is that a plaintiff may not, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability[.]") (citation and quotation marks omitted); *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 868 (N.D.

Cal. 2015) (equitable estoppel is appropriate where the plaintiff seeks to "enforce or challenge the terms, duties, or obligations" of an agreement).

It is similarly fundamental that a "party who submits to arbitration and later purports to withdraw waives the right to challenge legitimacy of arbitration and is bound by its result." *Rhoades v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 217, 1992 WL 84188, at *1 (9th Cir. 1992) (citing *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356–57 (9th Cir. 1983) (per curiam)); *Bryant Family Vineyard v. United Parcel Serv., Inc.*, 2016 WL 1410127, at *4 (N.D. Cal. Apr. 11, 2016) (a party who initiates and invests in arbitration has "submit[ted] to the authority of the arbitrator" and "cannot suddenly change his mind and assert lack of authority"). Garcia's "conduct" in filing a demand for arbitration (with the benefit of counsel) establishes that he has "waived any right to object" to arbitration as the forum for resolving his disputes with Amazon. *Fortune*, 724 F.2d at 1356–57 (concluding it would be "unreasonable and unjust" to allow a litigant "to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months").

Accordingly, whether under basic principles of estoppel or waiver, the Court should exercise its discretion and require that Garcia pursue his claims in the arbitration proceeding he has already initiated.

## 2. Even if He Had Not Acquiesced to Arbitration, Garcia's Arbitration Agreement with Amazon Is Enforceable

Amazon submits that the Court need look no further than Garcia's conduct to see that these claims are subject to arbitration. But reviewing the agreement itself will confirm that Garcia unmistakably agreed to arbitrate his disputes with Amazon individually, instead of pursuing them in court. The parties specifically selected the FAA to govern their arbitration agreement, and the FAA "direct[s] courts to . . . treat arbitration agreements as 'valid, irrevocable, and enforceable'" because of its "'liberal federal policy favoring arbitration agreements.'" *Epic Sys.*, 138 S. Ct. at 1621 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). Even if the FAA does not apply, the parties' clear

agreement to be bound by arbitration is enforceable under this Court's inherent authority and state law, and arbitration should be compelled.

### a. The FAA's Section 1 Exemption for Transportation Workers Does Not Apply

Section 1 of the FAA contains a "narrow[]" exemption for "'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112, 118 (2001) (quoting 9 U.S.C. § 1). This is a deliberately limited exception to the FAA's otherwise broad reach. Garcia, as the party challenging arbitration, bears the burden to prove that this exemption applies to him. *See Grice v. Uber Techs.*, 2020 WL 497487, at *5 (C.D. Cal. Jan. 7, 2020) (considering the narrow Section 1 exemption, "[p]laintiff has the burden of proving the exemption applies"), *aff'd In re Grice*, 974 F.3d 950 (9th Cir. 2020). As a purely local delivery driver, Garcia cannot meet this burden.

Congress passed the FAA in 1925 to replace the "widespread judicial hostility toward arbitration agreements" with a "liberal federal policy favoring arbitration." *Concepcion*, 563 U.S. at 339. Section 2 of the FAA requires courts to broadly enforce arbitration agreements in contracts "evidencing a transaction *involving* commerce." 9 U.S.C. § 2 (emphasis added). The use of "involving" "signal[s] an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). But in crafting this broad policy Congress was careful not "to unsettle established or developing statutory dispute resolution schemes covering [certain] specific workers," so it specifically exempted "seamen, railroad employees, and any other class of workers engaged in foreign or interstate commerce." *Circuit City*, 532 U.S. at 121 (citing, *e.g.*, Shipping Commissioners Act of 1872, 17 Stat. 262 (seamen); Transportation Act of 1920, §§ 300–316, 41 Stat. 456 (railroad employees)).

Considering the FAA's "pro-arbitration purposes" and this historical context, the Supreme Court in *Circuit City* instructed that the "residual" clause of Section 1 exempting "any other class of workers engaged in foreign or interstate commerce" be interpreted

"narrow[ly]." 532 U.S. at 115, 118.  First, the Court considered that the FAA's broad coverage provision using the phrase "involving commerce" must have a much larger "reach" than the exemption using the phrase "engaged in . . . commerce." *Id*. at 115–16 (collecting cases).  Next, under the interpretative canon *ejusdem generis*, the residual clause for "other classes of workers" can "embrace only objects similar in nature to" the preceding words "seamen" and "railroad employees." *Id*. at 114–15.  Lastly, when the FAA was enacted, "engaged" had the same meaning as the narrow words "[o]ccupied" or "employed."  *Rittmann*, 971 F.3d at 910. Taken together, courts have held that for a worker to be exempt under Section 1, he or she must be employed for the purpose of "transport[ing] goods or passengers across state lines (or international boundaries)." *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 915 (N.D. Cal. 2020); *see also Circuit City*, 532 U.S. at 115–16; *Wallace*, 970 F.3d at 803.

The Ninth Circuit has also decided that "'the residual exemption is . . . about what the worker does,' not just 'where the goods [or people] have been.'"  *In re Grice*, 974 F.3d at 958 (quoting *Wallace*, 970 F.3d at 802); *accord Circuit City*, 532 U.S. at 115–16.  In *Grice*, the Ninth Circuit rejected an interpretation of that clause that would have applied to Uber drivers under the theory that they "provid[e] transportation services to persons or goods traveling across state lines (i.e., in the flow of foreign or interstate commerce)."  974 F.3d at 958.  In *Rittmann*, however, a divided Ninth Circuit panel affirmed that Amazon Flex Delivery Partners are exempt because the goods they deliver "remain in the stream of commerce until they are delivered."  971 F.3d at 915.

Amazon believes that *Rittmann* was wrongly decided and has asked the Supreme Court to review the case, which it may agree to do as early as next month.  *See* RJN Ex. A.[4]  That alone warrants staying a determination on the Section 1 exemption (if the Court considers it necessary to resolving this Motion) until after the Supreme Court has resolved that petition.  *See CMAX, Inc.*, 300 F.2d at 268; *Roman v. Northrop Grumman*

---

[4] The petition for writ of certiorari filed in *Rittmann* is scheduled to be considered at the Supreme Court's  February 19, 2021 Conference.

Gibson, Dunn &
Crutcher LLP

*Corp.*, 2016 WL 10987312, at *3 (C.D. Cal. Dec. 14, 2016) (granting stay pending resolution of petition in *Epic Systems*). But even if *Rittmann* remains intact, Garcia's case involves a very different factual record and consequently warrants a different outcome. *See, e.g.*, *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912, 943 (N.D. Cal. 2018) (justifying different outcomes on motions to compel arbitration concerning "the same arbitration agreement" because "[h]ere, the record is different").

> **First**, the record here includes specific evidence that Delivery Partners do not merely deliver packages, but they also deliver groceries and local store orders just like the food delivery drivers who even *Rittmann* held would not be exempt under Section 1. Hawrysz Decl. ¶¶ 3–4; *see also Rittmann*, 971 F.3d at 916. Delivery Partners have the option to deliver packages and parcels from Amazon Delivery Stations; food and grocery orders from Whole Foods Market stores and Amazon Fresh Delivery Stations; and/or orders of products and food from other local stores. Hawrysz Decl. ¶¶ 3–5; *see also* https://flex.amazon.com/faq. This was not true in 2016 when Amazon moved to compel arbitration in *Rittmann*. At that time, Amazon had not yet acquired Whole Foods, and it was not until 2018 that Amazon began offering Whole Foods and Fresh deliveries through Amazon Flex, in addition to package deliveries. Hawrysz Decl. ¶ 4; RJN, Ex. C. Since then, Delivery Partners have performed increasingly more local food and grocery deliveries. Hawrysz Decl. ¶ 4. Accordingly, the "class of workers" is not the same as it was in 2016, as the present class more closely resembles food delivery drivers whom courts agree are *not* exempt from the FAA. *See In re Grice*, 974 F.3d at 956 ("food delivery drivers generally are not classified as 'transportation workers' within the meaning of § 1 even when they occasionally travel interstate"); RJN, Ex. B (*Jordan v. Maplebear Inc. dba Instacart*, No. CGC-19-579780 (S.F. Super. Ct. June 26, 2020), rejecting Section 1 exemption as to an Instacart "shopper" who "transport[s] retail goods to customers" from local stores); *Heller v. Rasier, LLC*, 2020 WL 413243, at *6 (C.D. Cal. Jan. 7, 2020) ("[t]here is broad consensus that intrastate deliveries of local goods do not fall within the interstate transportation worker exemption").

*Second*, even concerning the packages that Delivery Partners deliver, the record here shows that the interstate journey of packages halts as they "come to rest" at facilities before they are repackaged and sent out for final delivery to customers.  Hawrysz Decl. ¶ 5; *cf. Rittmann*, 971 F.3d at 916 (concluding that "Amazon packages do not 'come to rest,' at Amazon warehouses").  Goods arrive at Amazon Fulfillment Centers and are unpacked, sorted, and stowed in a warehouse where they rest until a customer orders the item.  Hawrysz Decl. ¶ 5.  Once a customer places an order, the item is selected from the Fulfillment Center's shelves and repackaged for delivery, often sent to a local Delivery Station where it may be picked up by an Amazon Flex Delivery Partner.  *Id.*  As a result, "any further 'commerce'" after a package arrives at a Fulfillment Center "require[s] new or subsequent transactions, all of which [take] place within the state."  *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 542–43 (1935).  Unlike *Rittmann*, this more clearly demonstrates that Delivery Partners do not facilitate an unbroken, continual "flow" of packages in commerce.

*Third*, the record here also includes more evidence about the purely *local* nature of the Delivery Partners' services.  Although the Ninth Circuit in *Rittmann* acknowledged that "most [Amazon Flex] deliveries take place intrastate," the full extent to which deliveries are localized was simply not before the court.  970 F.3d at 907.  Delivery Partners select a specific local zip code for their delivery services—Garcia self-selected the Los Angeles metropolitan area.  Hawrysz Decl. ¶ 6.  And, it is still the case that the vast majority of Amazon Flex deliveries are intrastate; to the extent a Delivery Partner crosses state lines (something there is no evidence of here), it is a merely incidental, and not primary, aspect of their deliveries.  *Id.*; *McGrath v. DoorDash, Inc.*, 2020 WL 6526129, at *7–8 (N.D. Cal. Nov. 5, 2020) (delivery drivers only had a "casual and incidental relationship to interstate transit" even though they occasionally crossed state lines); *Capriole v. Uber Techs., Inc.*, 460 F. Supp. 3d 919, 930–31 (N.D. Cal. 2020) (same), *appeal filed* No. 20-16030 (9th Cir. 2020); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 899 (N.D. Cal. 2018) ("gig economy" "delivery drivers" are not engaged in commerce "where

[they] did not allege that [they] made interstate deliveries"); *Heller,* 2020 WL 413243, at *9 (declining to expand an otherwise "narrow" exemption to drivers who transport passengers to and from the airport only "within a metro area"). Accordingly, the facts and evolution of the Flex Program distinguish the record here from that in *Rittmann* and warrant applying the FAA, the parties' chosen law.

### b. The Parties Executed a Valid Agreement to Arbitrate Their Disputes That Is Not Subject to Rescission

Once the FAA applies, the Court need only conclude that (1) a valid agreement to arbitrate exists; and (2) the agreement covers the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Both are met here.

Under the FAA, ordinary state law contract formation principles determine whether the parties have validly agreed to arbitrate the dispute. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In applying these principles, the Court must give "due regard to the federal policy in favor of arbitration," *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996), and must not apply state contract law in a way that disfavors or interferes with arbitration, *see Concepcion*, 563 U.S. at 346. The parties' arbitration agreement designates Washington law as the governing law for all matters not governed by the FAA. Hawrysz Decl., Ex. A § 12. Under Washington law, a valid contract requires an objective manifestation of mutual assent, sufficiently definite terms, and consideration—all of which are present here. *See Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d 171, 177–78 (2004).

The Amazon Flex TOS constitutes a valid offer to become a Delivery Partner, the terms of which prospective Delivery Partners review in the Flex app. Hawrysz Decl. ¶ 10. When Garcia completed the sign up process, he manifested his consent to those terms by *twice* affirmatively checking a box stating he "AGREE[D] AND AC-CEPT[ED]" the TOS. *Id*. ¶ 9; *see* Restatement (Second) of Contracts § 3; *Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wash. 2d 371, 389 (1993) ("indicat[ing] . . . acceptance" is sufficient to show mutual assent). Additionally, there

is sufficient consideration, because *both* Garcia and Amazon agreed to forgo their rights to the judicial forum. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (a promise to be bound by the arbitration process itself serves as adequate consideration). Finally, the agreement covers the disputes here, as it requires arbitration of any dispute "arising out of or relating in any way to [the] agreement" that itself classifies Garcia as an independent contractor. Hawrysz Decl., Ex. A § 11. As all of Garcia's claims are based on his supposed misclassification under this agreement, they clearly fall within the arbitration provision's broad scope. *See* FAC ¶ 25.[5]

To overcome evidence of a valid agreement, Garcia, as the "party opposing arbitration[,] bears the burden of showing that the agreement is not enforceable" because some ground for contract rescission exists, like unconscionability. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 302 (2004). Garcia cannot meet this burden.

**No Procedural Unconscionability.** Procedural unconscionability is "the lack of a meaningful choice" to accept the contract, "considering all the circumstances." *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wash. 2d 568, 588 (2000). Garcia had a meaningful choice and a reasonable opportunity to review and understand the terms of the agreement. Indeed, he *twice* affirmatively indicated he "AGEE[D] AND AC-CEPT[ED]" the TOS on his smartphone, including *specifically acknowledging* the arbitration provision. Hawrysz Decl. ¶¶ 9, 12–13; *see also Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) (enforcing "clickwrap" agreement where plaintiff "was required to acknowledge that he 'read and understood' the [terms of service]"); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (click-wrap arbitration agreement was not procedurally unconscionable). Garcia also cannot avoid the TOS by denying that he ever saw or read them, in part because he clearly understood that he had an obligation (or at least a right) to arbitrate his disputes with Amazon that he manifested by *trying to arbitrate his disputes*. Cooney Decl. ¶ 3. Even setting

---

[5]  The claims against Messrs. Deal, Madan, Miller, and Felton are also encompassed by the TOS, as Garcia contends that they were acting as Amazon's "agents." FAC ¶¶ 12, 14, 20; *see also Comer*, 436 F.3d at 1101 (arbitration agreements can be enforced through "ordinary contract and agency principles").

Gibson, Dunn & Crutcher LLP

that aside, Garcia's objective manifestation of assent to the TOS governs, so long as he had the *opportunity* to read the agreement, which he certainly had here.  *See Keystone,* 152 Wash. 2d at 177–78; *M.A. Mortenson*, 140 Wash. 2d at 583–88.

Moreover, the TOS "clear[ly]" "set forth [its terms] in such a way that an average person could . . . understand them."  *Czerwinski v. Pinnacle Prop. Mgmt. Servs., LLC*, 2019 WL 2750183, at *6 (Wash. Ct. App. July 1, 2019).  The TOS states *on the first page* in all-capital, bolded font that by completing the sign up process, Garcia would "AGREE TO RESOLVE DISPUTES" with Amazon "ON AN INDIVIDUAL BASIS THROUGH **FINAL AND BINDING ARBITRATION**."  Hawrysz Decl., Ex. A at 1.  The TOS also provided Garcia with two weeks to opt out of the arbitration agreement, which further "ensured [Garcia's] decision to [accept] the arbitration agreement was a voluntary and meaningful choice."  *Mayne v. Monaco Enters., Inc.*, 191 Wash. App. 113, 122 (2015); *see also Mohamed*, 848 F.3d at 1211 (same).

**No Substantive Unconscionability.**  A contractual term is substantively uncon-scionable under Washington law where it is "'one-sided or overly harsh,' '[s]hocking to the conscience,' 'monstrously harsh,' and 'exceedingly calloused.'"  *Adler v. Fred Lind Manor*, 153 Wash. 2d 331, 344–45 (2004).  Far from meeting this standard, the TOS (1) requires *both parties* to arbitrate disputes through a neutral arbitrator from the American Arbitration Association ("AAA"), in accordance with the AAA Commercial Arbitration Rules, which require a written arbitration award; (2) requires that Garcia pay no more than $200 in filing fees; (3) allows him to pursue any form of relief available in court; (4) does not reduce the statute of limitations or limit discovery; and (5) ensures that the arbitration "take place at a mutually-convenient location within 45 miles from the last location" Garcia made a delivery.  Hawrysz Decl., Ex. A § 11.  The terms are very fair and not "[s]hocking to the conscience."  *Adler*, 153 Wash. 2d. at 344–45.  Thus, Garcia cannot establish unconscionability.

Because the parties' agreement to arbitrate is valid, not subject to rescission, and covers the disputes raised here, the Court should compel arbitration under the FAA.

**c.    The Parties' Agreement Is Enforceable Under Federal Law Through the Court's Inherent Authority**

Even if the Court concludes that Garcia is exempt from the FAA under Section 1, the agreement should be enforced under the "substantive law" embodied in the FAA pursuant to the Court's inherent authority. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 25 n.32; *see also Southland Corp. v. Keating*, 465 U.S. 1, 12–13 (1984) (recognizing that the FAA's provisions are a body of substantive law); *Allied-Bruce*, 513 U.S. at 271 (same). The Ninth Circuit in *Rittmann* disagreed with Amazon that federal law could apply to the agreement if the agreement was exempted from the FAA. 971 F.3d at 919. But the Ninth Circuit did not address whether a district court could use its "inherent authority to stay litigation in favor of an alternative dispute resolution mechanism of the parties' choosing." *New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 543 (2019). *New Prime* left open the possibility that a district court could do so—even where an exemption to the FAA applies. *Id.*; *see also Mason-Dixon Lines, Inc. v. Local Union No. 560, Int'l Bhd. of Teamsters*, 443 F.2d 807, 809 (3d Cir. 1971) (affirming stay based on parties' agreement to arbitrate, even though FAA was inapplicable). Here, the parties specifically stated that the FAA "and applicable federal law" govern, and fundamental choice-of-law principles support honoring that intentional selection, especially since Garcia himself has already sought to enforce the agreement against Amazon by filing his separate arbitration demand. Hawrysz Decl., Ex. A § 11; Restatement (Second) Conflict of Laws § 187; Cooney Decl. ¶¶ 2–3. Accordingly, the Court has the authority to give effect to that agreement and the parties' original intentions under federal law.

**d.    The Agreement Is Enforceable Under State Law**

Finally, the parties' arbitration agreement is alternatively enforceable under the laws of both Washington and California. This Court may compel arbitration under applicable state law even if the FAA does not apply, because an agreement's exemption from the FAA "has no impact on other avenues (such as state law) by which a party may compel arbitration." *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 24 (1st Cir. 2017), *aff'd*, 139

S. Ct. 532 (2019).  As explained above, the arbitration agreement is a valid agreement under Washington law—the law the parties agreed would govern the TOS to the extent the agreement is not subject to the FAA—and the Court can enforce it on that basis.  *See supra* Section 2; *Romney v. Franciscan Med. Grp.*, 186 Wash. App. 728, 748 (2015) (finding valid agreement to arbitrate where the agreement is not unconscionable).

The choice-of-law provision in the TOS that Garcia signed is the same provision that the Ninth Circuit analyzed in *Rittmann*.  That provision chooses Washington law to govern the TOS "except for Section 11, which is governed by the [FAA] and applicable federal law."  Hawrysz Decl., Ex. A § 12.  Amazon argued in *Rittmann* that the agreement's severability clause permitted the court to excise everything beginning with "except for" if the FAA is inapplicable.  971 F.3d at 920.  The Ninth Circuit rejected that argument, maintaining that doing so would "violate the principle that [courts] are not free to rewrite [a] contract under the guise of severability."  *Id.*  While Amazon disagrees with that holding, which conflicts with the First Circuit's consideration of the same clause, *see Waithaka v. Amazon.com, Inc.*, 966 F.3d 1, 27 (1st Cir. 2020), it understands that this Court is bound to follow the Ninth Circuit.  Nonetheless, Garcia's claims can also be compelled to arbitration based on an argument not presented to the district court in *Rittmann*.  The first page of Garcia's TOS, which had to be acknowledged separately, *also* memorialized the parties' intent to arbitrate disputes.  Hawrysz Decl. ¶¶ 9–10, Ex. A at 1.  This first page agreement is not exempted from the choice-of-law provision's selection of Washington law, and so the TOS would not have to be "rewritten" for Washington law to apply.  *See id.* § 12; *Cf. Rittmann*, 971 F.3d at 920; *see supra* Section 2.

Also, even under California law, there is still a valid and enforceable arbitration agreement.  A valid contract exists under California law if there are parties capable of contracting, mutual consent, a lawful objective, and sufficient consideration.  Cal. Civ. Code § 1550.  The parties' agreement here satisfies each requirement.  *First*, the parties are capable of contracting because all persons except minors and those of unsound minds have legal capacity to make a contract.  *Id.* § 1556.  *Second*, there is mutual consent

because Amazon offered, and Garcia *twice* accepted, the TOS stating that the parties will arbitrate their disputes.  Hawrysz Decl. ¶¶ 12–13; *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945 (N.D. Cal. 2015) (enforcing click-wrap arbitration agreement under California law). *Third*, the agreement had a lawful objective, which is the resolution of disputes through arbitration.  *See Schatz v. Allen Matkins Leck Gamble & Mallory LLP*, 45 Cal. 4th 557, 564 (2009) (highlighting the "strong public policy in favor of arbitration").  *Lastly*, the mutual promises to arbitrate disputes establish adequate consideration.  *Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990), *overruled on other grounds by Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996).

Further, Garcia cannot show that the agreement is unconscionable under California law.  Cal. Civ. Proc. Code § 1281.2 (requiring arbitration upon showing "the existence of a written agreement to arbitrate" unless there are grounds for rescission).  The agreement is not procedurally unconscionable because the TOS provides for "neutrality of the arbitrator, . . . adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 91 (2004); *see supra* Section 2(a).  Garcia's ability to opt out of the arbitration provision—and his choice not to do so—further illustrate the lack of unconscionability here.  *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); Hawrysz Decl. ¶ 13.

At bottom, regardless of the applicable law, Garcia's claims should be compelled to arbitration and the Court should stay this action until that arbitration is resolved.

## IV.   CONCLUSION

For the foregoing reasons, this Court should dismiss Garcia's claims in their entirety.  In the alternative, the Court should compel Garcia's claims to arbitration and stay the action pending the arbitration proceedings.

Gibson, Dunn &
Crutcher LLP

25

1   Dated:  February 19, 2021

2                                         GIBSON, DUNN & CRUTCHER LLP

3

4                                         By:  /s/  *Michael Holecek*
                                                     Michael Holecek
5

6                                         Attorneys for Defendants AMAZON.COM
                                          SERVICES LLC and AMAZON LOGISTICS,
7                                         INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28